IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ERICK GARCIA SANCHEZ,<br>JOSE CHAN CHAJ, MIGUEL A. ROJAS<br>TUMALAN, JONATHAN, POBLETE<br>LEMUS, JOSE V. PEREZ MORALES,<br>EFRAIN GONZALEZ RUBIO,<br>ALFONSO GONZALEZ RUBIO,<br>ISRAEL PEREZ PEREZ (also known as<br>"PEDRO DE JESUS DE LEON"), ESTEBAN<br>F. GONZALEZ HERNANDEZ, DAVID<br>GOMEZ DELGADO, DAVID ORTIZ<br>HERNANDEZ, JESUS PELAEZ PADILLA,<br>and FABIAN G. URZUA, on behalf of<br>themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>TRUSE TRUCKING, INC.<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br><br><br><br><br><br><br>1:13CV415 |

MEMORANDUM OPINION AND ORDER

BEATY, District Judge.

This matter is before the Court on a Motion to Dismiss and Request for Judicial Notice of Facts [Doc. #7] filed by Defendant Truse Trucking, Inc. ("Defendant"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In the underlying action, Plaintiffs Erick Garcia Sanchez, Jose Chan Chaj, Miguel A. Rojas Tumalan, Jonathan Poblete Lemus, Jose V. Perez Morales, Efrain Gonzalez Rubio, Alfonso Gonzalez Rubio, Israel Perez Perez (also known as "Pedro De Jesus de Leon"), Esteban F. Gonzalez Hernandez, Jesus Pelaez Padilla, and Fabian G. Urzua (collectively "Plaintiffs") assert a claim for violations of the Fair Labor Standards Act (FLSA). Plaintiffs bring this claim on their own behalf and pursuant to 29 U.S.C. § 216(b), as

potential representatives of a proposed collective action of similarly situated employees.[1]  For

the reasons discussed herein, the Court will deny Defendant's Motion to Dismiss [Doc. #7].

Furthermore, the Court will deny Defendant's Request for Judicial Notice of Facts [Doc. #7],

but such a denial is without prejudice to Defendant raising such a request at a later stage in this

litigation.

## I.    FACTUAL BACKGROUND

The factual allegations of Plaintiffs' Complaint are taken as true for purposes of

Defendant's Motion to Dismiss.  Plaintiffs, and members of the proposed collective action, are

former and current employees of Defendant who were employed by Defendant at some time

since May 23, 2010, within the three years prior to the filing of the instant Complaint.[2]  At all

times relevant to the matters related to the instant action, Plaintiffs, and members of the

proposed collective action, were residents of North Carolina.  Defendant is a freight shipping

---

[1] The Court notes that Plaintiffs have not yet filed a motion to proceed as a collective action pursuant to 29 U.S.C. § 216(b).  Therefore, this Opinion is limited to the Court's determination of whether Plaintiffs' Complaint fails to state a claim under Rule 12(b)(6) and does not purport to make any determination as to whether the Court will allow this action to proceed as a collective action under § 216(b).

[2] Pursuant to 29 U.S.C. § 255, a claim under the FLSA must generally be commenced within two years after the accrual of the cause of action.  § 255(a).  However, a "cause of action arising out of a willful violation [of the FLSA] may be commenced within three years after the cause of action accrued."  Id.  In this case, Plaintiffs allege that Defendant's actions were willful and in violation of § 255(a), (see Compl. at ¶¶ 36-37), and for the purposes of a 12(b)(6) motion to dismiss, the Court will accept such allegations as true.  Also, as Defendant makes no argument relating to Plaintiffs' allegations that Defendant's conduct was willful, or that Plaintiffs' claims are otherwise untimely, the Court will not inquire into such an issue.  See Day v. McDonough, 547 U.S. 198, 205, 126 S. Ct. 1675, 164 L. Ed. 2d 376 (2006) ("A statute of limitations defense . . . is not jurisdictional, hence courts are under no *obligation* to raise the time bar *sua sponte*." (internal quotation marks omitted) (emphasis added in the original)).

and trucking company that runs a distribution and freight hauling business from Greensboro, North Carolina. Plaintiffs and members of the proposed collective action were required to load and unload trucks for Defendant at Defendant's Greensboro facility and at other merchant facilities where Defendant "distributed foodstuffs and other goods." (Compl. [Doc. #1], ¶ 19.) Plaintiffs, and members of the proposed collective action, loaded and unloaded merchandise at merchant locations in North Carolina, South Carolina, Georgia, Virginia, and Tennessee. Plaintiffs, and members of the proposed collective action, arrived at work between 3:00 a.m. and 4:00 a.m. each day, Monday through Saturday, and left work between 7:00 p.m. and 8:00 p.m. each day, Monday through Saturday. Thus, Plaintiffs and members of the proposed collective action worked approximately fifteen hours per day and six days per week for Defendant. Plaintiffs and members of the proposed collective action were not paid on an hourly basis but were paid a flat rate salary on a monthly basis, averaging $1,200.00 to $1,700.00 per month before taxes. Plaintiffs, and members of the proposed collective action, were paid their wages in cash, but they also received payroll stubs showing that state and federal taxes were deducted from their salary. Plaintiffs and members of the proposed collective action were not paid any overtime wages for their work, although they worked more than forty hours per week. Plaintiffs allege that Defendant failed to keep proper records of daily and weekly hours worked by Plaintiffs, and the members of the proposed collective action, and Plaintiffs allege that such a failure to maintain adequate records was willful and in violation of the FLSA. Plaintiffs assert that Defendant "knew or showed reckless disregard as to whether their [sic] conduct was prohibited by the FLSA and its accompanying regulations." (Compl. at ¶ 38.) Plaintiffs allege

that Defendant "engaged in an intentional company policy or plan", which characterized Plaintiffs and members of the proposed collective action as salaried employees in an effort to avoid paying Plaintiffs and member of the proposed class their appropriate minimum and overtime wages under the FLSA. (Id. at ¶ 25.)

## II.    STANDARD OF REVIEW

Defendant's Motion to Dismiss [Doc. #7] is filed pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted. The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). A motion made pursuant to Rule 12(b)(6) " 'does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.' " Id. at 243-44 (quoting Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)). In reviewing a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Fourth Circuit has directed that courts "'take the facts in the light most favorable to the plaintiff,' but '[they] need not accept the legal conclusions drawn from the facts,' and '[they] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.' " Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. 1955) (citations omitted)). Thus, dismissal of a complaint is proper where plaintiff's factual allegations fail to "produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 683, 129 S. Ct. 1937).

## III.    FLSA CLAIM

A.    Whether Plaintiffs pled sufficient facts to state claims under 29 U.S.C. §§ 206 & 207.

Plaintiffs bring their claims pursuant to 29 U.S.C. §§ 206, 207, asserting that Defendant failed to pay Plaintiffs and members of the proposed collective action the required minimum wage, in violation of § 206, and that Defendant failed to pay Plaintiffs and members of the proposed collective action overtime, in violation of § 207.[3] Defendant filed its Motion to

_____

[3] Plaintiffs assert that Defendant did not maintain accurate payroll records in violation of 29 C.F.R. § 516.2(a)(7). (Compl. at ¶ 36.) Defendant argues, " '[The FLSA] does not authorize employee suits for violations of the FLSA's recordkeeping requirements. Authority to enforce the Act's recordkeeping provisions is vested exclusively in the Secretary of Labor.' " (Def.'s Br. in Supp. Mot. to Dismiss [Doc. #8], at 19 (quoting Elwell v. Univ. Hosps. Home Care Servs., 276 F.3d 832, 843 (6th Cir. 2002) (citing 29 U.S.C. § 217))); see Iglesias v. Wal-Mart Stores East, L.P., No. 2:09CV8, 2009 WL 8760729, at *3 (E.D. Va. Oct. 26, 2009) (finding no

Dismiss pursuant to Rule 12(b)(6), arguing that Plaintiffs' Complaint fails to state a claim under the FLSA because Plaintiffs fail to meet the pleading standards set forth in <u>Iqbal</u> and <u>Twombly</u>. Specifically, Defendant asserts that Plaintiffs' Complaint fails to state a claim because Plaintiffs did not allege any facts regarding (1) "the *actual* number of hours either worked, or believed to be worked, by any particular plaintiff during any particular day, week, or month during the relevant period"; (2) "the *actual* pay rate, or *actual* compensation received by any particular plaintiff at any particular time"; or (3) "how any particular plaintiff or class member is supposedly owed for unpaid wages–whether it be unpaid minimum wages or overtime." (Def.'s Br. in Supp. Mot. to Dismiss [Doc. #8], at 15-16 (emphasis added in the original).) Essentially, Defendant argues that Plaintiffs' Complaint is insufficiently pled because Plaintiffs only assert average hours and compensation rates without more particularized details.

To state a claim for unpaid overtime wages under FLSA, Plaintiffs must allege "(1) that [they] worked overtime hours without compensation; and (2) that the employer knew or should have known that [they] worked overtime but failed to compensate [them] for it." <u>Alston v. Becton, Dickinson & Co.</u>, 1:12CV452, 2013 WL 4539634, at *4 (M.D.N.C. Aug. 27, 2013);

---

private cause of action for failure to maintain records under the FLSA), <u>aff'd</u>, 375 F. App'x 364 (4th Cir. 2010); <u>Buckner v. United Parcel Serv., Inc.</u>, 5:09-CV-411-BR, 2010 WL 2889586 (E.D.N.C. July 21, 2010), <u>aff'd</u>, 489 F. App'x 709 (4th Cir. 2012) (same); <u>Barton v. Pantry, Inc.</u>, No. 1:04-CV-748, 2006 WL 1367421, at *3-4 (M.D.N.C. May 17, 2006) (same). However, Plaintiffs respond by stating that they have not asserted a separate cause of action for failure to maintain payroll records under the FLSA and that Plaintiffs only referenced the alleged recordkeeping violation in their Complaint "as evidence of the willfulness of [ ] Defendant's FLSA violations." (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss [Doc. #9], at 3 n.1.) As Plaintiffs have acknowledged that they have not asserted a separate cause of action for failure to maintain payroll records, the Court will not address that issue.

Butler v. DirectSatUSA, LLC, 800 F. Supp. 2d 662, 667 (D. Md. 2011); see Davis v. Food Lion, 792 F.2d 1274, 1276 (4th Cir. 1986).  Similarly, to state a claim for a violation of the FLSA minimum wage provision, Plaintiffs must allege that (1) they were employed by Defendant; (2) their work "involved interstate activity"; and (3) "they performed work for which they were undercompensated."  See Pruell v. Caritas Christi, 678 F.3d 10, 12 (1st Cir. 2012) (stating the elements to state valid FLSA claims under §§ 206 and 207).  The Court finds that Plaintiffs' allegations sufficiently state claims under §§ 206 and 207 of the FLSA.  Although Defendant cites to cases outside of the Fourth Circuit for the proposition that Plaintiffs have failed to allege sufficient factual content to support their FLSA claims, the Court finds that the allegations in Plaintiffs' Complaint comport with the requisite level of factual detail necessary to survive a Rule 12(b)(6) dismissal when compared with factually similar cases used by courts within the Fourth Circuit.  Additionally, the Court finds that the cases Defendant cites, for its proposition that Plaintiffs have failed to state a claim under the FLSA, do not require dismissal of Plaintiffs' Complaint.

In this case, Plaintiffs have alleged that they, and members of the proposed collective action, (1) were employed by Defendant during the period between May 23, 2010 to the present; (2) were employed as laborers to load and unload trucks for Defendant; (3) loaded and unloaded merchandise at merchant locations in North Carolina, South Carolina, Georgia, Virginia, and Tennessee; (4) worked approximately 90 hours per week; and (5) were paid, on average, $1,200 to $1,700 per month.  Plaintiffs also allege that they, and members of the proposed collective action, were paid below the minimum wage, were not paid overtime wages, and that Defendant failed to maintain records of employee work hours in an effort to willfully violate the FLSA.

Such allegations are consistent with other cases holding that plaintiffs have sufficiently pled allegations to support their FLSA claims. <u>Rodriguez v. F &B Solutions LLC</u>, 1:14CV183, 2014 WL 2069649, at *3 (E.D. Va. Apr. 29, 2014) (finding the plaintiff's complaint sufficient where plaintiff alleged that she was employed by her employer for more than seven years, that she worked in excess of 40 hours per week, the type of work she performed, and that she was not paid overtime compensation nor did she receive minimum wage); <u>Long v. CPI Sec. Sys., Inc.</u>, No. 3:12-CV-396-RJC-DSC, 2012 WL 3777417, at *4 (W.D.N.C. Aug. 30, 2012) (finding the complaint sufficient where the plaintiff alleged that he was employed with Defendant for four years and alleged that he worked 50 to 60 hours per week during the time of his employment); <u>Butler</u>, 800 F. Supp. 2d at 668 (finding the plaintiffs' complaint sufficient where it detailed the "types of work activities that occupied [p]laintiffs' alleged overtime hours and provides [d]efendants with sufficient notice of the basis of the allegations to form a response"); <u>Davis v. Skylink LTD.</u>, No. 3:11-0094, 2011 WL 2447113, at *4 (S.D.W. Va. June 15, 2011) (finding complaint alleging FLSA overtime violation sufficient where the plaintiffs alleged that the employer did not keep adequate records of their work hours[4] and that the plaintiffs regularly worked in excess of 40 hours per week without overtime compensation and finding that "plaintiffs need not provide a running list of specific work days for which they were not paid; it is enough that they have provided a clear factual statement charging as much"). <u>But see</u>

---

[4] The Court notes that the district court in <u>Skylink</u> considered the plaintiffs' allegation that the defendant did not keep adequate records in determining that the plaintiffs sufficiently stated a FLSA overtime compensation claim. <u>Skylink</u>, 2011 WL 2447113, at *4 However, the <u>Skylink</u> court did not conclude that the plaintiffs had successfully alleged a separate record-keeping claim under the FLSA. <u>See id.</u> at *3. Indeed, the <u>Skylink</u> court determined that there was no private cause of action for a FLSA record-keeping claim. <u>Id.</u>

Dejesus v. HF Mgmt. Servs., LLC, 726 F.3d 85, 89 (2d Cir. 2013), cert. denied, 134 S. Ct. 918, 187 L. Ed. 2d 781 (2014) (finding the complaint insufficient to allege a FLSA unpaid overtime claim where the complaint did not estimate the number of hours worked "in any or all weeks or provide any other factual context or content" and the complaint "was devoid of any numbers to consider beyond those plucked from the statute").  Also, as stated in Rodriguez, in applying the more "lenient" pleading standard espoused in Butler,[5]"a record of the precise number of hours worked is normally in the possession of the employer and as such, can often be obtained through discovery." Rodriguez, 2014 WL 2069649, at *2; , 800 F. Supp. 2d at 668 ("While defendants might appreciate having Plaintiffs' estimate of the overtime hours worked at this stage in litigation, it would be subject to change during discovery and if/when the size of the collective action grows and thus of limited value.").

Defendant argues in its Reply Brief [Doc. #11], that the Court should consider the opinions of other federal appellate courts, outside of the Fourth Circuit, that have considered the pleading standards regarding FLSA claims and based on those decisions, the Court should find that Plaintiffs' Complaint is insufficiently pled.  Specifically, Defendant cites to two appellate court decisions from the First and Second Circuits, Pruell, 678 F.3d 10 and Lundy v. Catholic Health System of Long Island Inc., 711 F.3d 106 (2d Cir. 2013), in support of its argument that Plaintiffs' Complaint fails to state a claim under 12(b)(6).  However, the Court finds that Defendant's argument is misplaced even when considering the cases cited in its Reply Brief.  In Pruell, the First Circuit affirmed the district court's decision, finding that the plaintiffs'

---

[5] The district court in Butler adopted a more lenient approach in determining the level of specificity required to plead a FLSA claim.  See Butler, 800 F. Supp. 2d at 668.

complaint failed to state a FLSA claim for alleged violations under §§ 206 and 207. See Pruell, 678 F.3d 10. Specifically, the First Circuit stated that the key allegation in the plaintiffs' complaint, that is, that the plaintiffs "regularly worked hours over 40 in a week and were not compensated for such time" was a borderline phrase under the Iqbal and Twombly standard. See id. at 13. Such a statement, standing alone, was insufficient to state a claim under Rule 12(b)(6), as it is a mere recitation of the FLSA statutory language; however, the Court found that the borderline phrase must still be analyzed in light of the other factual assertions in the complaint. Id. Ultimately, the Pruell court determined that the plaintiffs in that case failed to state a claim. However, such a decision appears to have hinged on the fact that because the plaintiffs only pled that they worked over 40 hours a week without additional compensation–but the plaintiffs did not allege the nature of the work done when they worked more than 40 hours per week–that the plaintiffs could still have been properly compensated under the FLSA, as various forms of "work" are not compensable under the FLSA (i.e. non-principal preliminary or postliminary work; training; insignificant time). Id. at 14. To that end, because the complaint in Pruell did not explain the nature of the work done by the plaintiffs in the work time that went beyond 40 hours per week, it was not clear whether the employer's failure to pay the plaintiffs for the extra, uncompensated time was a violation under FLSA. However, the Complaint in this case does not suffer from a similar defect. In this case, Plaintiffs' Complaint alleges that Plaintiffs and members of the proposed collective action "arrived at work between 3 a.m. to 4 a.m. each day from Monday through Saturday and work [sic] until 7 p.m. to 8 p.m. each day, an average of 15 hours per day, six days a week loading and unloading trucks for Defendant." (Compl. at ¶ 20.) Thus, Plaintiffs sufficiently allege that they, and members of the proposed

collective action, worked well over 40 hours per week and described the nature of such work to be "loading and unloading trucks for Defendant." (See id. at ¶¶ 19, 20.)

Defendant also cites to Lundy where the Second Circuit, in finding that the plaintiffs failed to sufficiently allege a violation under the FLSA, determined that the plaintiffs had "not alleged a single workweek in which they worked at least 40 hours and also worked uncompensated time in excess of 40 hours." Lundy, 711 F.3d at 114. Particularly, in Lundy, the plaintiffs made allegations that they "typically" worked shifts in excess of 30 or 37.5 hours per week and "occasionally" worked additional shifts that extended the hours that they usually worked to an amount in excess of 40 hours per week. Id. at 114-15. However, the Lundy court concluded that the plaintiffs did not allege that they were denied overtime pay in a week where they worked additional shifts. Id. at 115. The case before the Court is factually distinguishable from Lundy because Plaintiffs allege that they, and members of the proposed collective action, generally worked well in excess of 40 hours per week and were not paid overtime for the hours they worked in excess of those 40 hours. Specifically, in this case, Plaintiffs provide information that they generally worked 90 hours per week and that they were paid an average flat rate salary of $1,200.00 to $1,700.00 per month. Although, Plaintiffs' Complaint used terms such as "average" which may be somewhat analogous to the "regular[ ], "typical[ ]", or "occasional[ ]" language that was similarly used in the complaints in Pruell and Lundy, the Court does not find that the Complaint in this case suffers from the lack of factual specificity that doomed the complaints in Pruell and Lundy.

Defendant also cites to the Davis v. Abington Memorial Hospital for the proposition that Plaintiffs are required to cite specific instances in which any plaintiff worked overtime. Nos. 09-

5520, 09-5533, 09-5548, 09-5549, 09-5550, 09-5551, 2012 WL 3206030, at *15 (E.D. Pa. Aug. 7, 2012). However, the Court notes that when the district court in <u>Davis</u> stated that the "[p]laintiffs have failed to allege a single specific instance in which a named Plaintiff worked overtime and was not compensated for this time", the court also stated that it could not determine from the complaint whether any single named plaintiff "ever worked more than 40 hours a week and was not compensated for that time at an overtime rate." <u>Id.</u> at 16. Additionally, in that context, the <u>Davis</u> court was assessing whether the plaintiffs adequately alleged that their meal breaks, training programs, and work done before and after their shifts were compensable as overtime under FLSA. <u>Id.</u> at 15. The facts, as alleged in the Complaint in this case, are decidedly different from <u>Davis</u> because Plaintiffs, in this case, clearly allege that they, and members of the proposed collective action, worked in excess of 40 hours per week and that they were undercompensated. Additionally, the hours alleged to have been worked in excess of 40 hours do not appear, based on the factual allegations in the Complaint, to be hours that can be solely attributed to breaks, trainings, or work done before or after work shifts. Indeed, as can be gleaned from the Complaint, Plaintiffs allege that they were generally required to work well in excess of 40 hours per week, for which Plaintiffs allege that they, and members of the proposed collective action, received no overtime compensation or were paid below the required federal minimum wage. Furthermore, the facts in <u>Acosta v. Yale Club of NYC</u>, another case cited to by Defendant, are inapposite from the facts of this case because in <u>Acosta</u>, the plaintiffs merely alleged that they were not paid overtime work without alleging that they worked over forty hours per week. No. 94CIV.0888(KTD), 1995 WL 600873, at *4 (S.D.N.Y. Oct. 12, 1995). As previously stated, Plaintiffs clearly allege that they, and members of the proposed

12

collective action, worked in excess of 40 hours per week.

Finally, Defendant cites to <u>Bailey ex rel v. Border Foods, Inc.</u>, Civil No. 09-1230 (RHK/AJB), 2009 WL 3248305 (D. Minn. Oct. 6, 2009) for the proposition that because Plaintiffs' Consent to Join Suit Forms [Doc. #1-1] contain statements that Plaintiffs believe they had not been paid for all compensable time that they worked for Defendant that such statements are speculative and renders the Complaint implausible. However, the Court notes that in <u>Bailey</u>, the district court determined that the consent forms failed to show that the plaintiffs' wages fell below minimum wage but the Court also considered the consent forms in tandem with the fact that the complaint failed to allege any facts "that would permit the [c]ourt to infer that [p]laintiffs actually received less than minimum wage." <u>Id.</u> at *2. In this case, Plaintiffs have alleged that they worked approximately 90 hours per week and were paid $1,200 to $1,700 per month, which would show that Plaintiffs, and members of the proposed collective action, were paid below the statutorily required minimum wage rate of $7.25 per hour.[6] <u>See</u> 29 U.S.C. § 206(a)(1)(C); United States Department of Labor Website, http://www.dol.gov/dol/topic/wages/minimumwage.htm (last visited July 11, 2014) ("The federal minimum wage for covered nonexempt employees is $7.25 per hour effective July 24, 2009. The federal minimum wage provisions are contained in the Fair Labor Standards Act

---

[6] Even construing the numbers in their most conservative light, based on the allegations in the Complaint, Plaintiffs, and members of the proposed collective action, were paid less than $7.25 per hour. Specifically, based on the allegations of the Complaint, Plaintiffs worked, at minimum, 15 hours per day, 6 days a week, which is 90 hours per week. Thus, Plaintiffs worked approximately 360 hours per month. In dividing the most that Plaintiffs, or members of the proposed collective action, were paid per month ($1,700) by an approximate amount of hours they worked per month (360 hours), Plaintiffs were paid approximately $4.72 per hour.

(FLSA).").  Therefore, for the reasons stated herein, the Court does not find that the Complaint fails to state a claim, and, thus, the Complaint should not be dismissed pursuant to Rule 12(b)(6).

B.  Whether Plaintiffs pled sufficient facts that disclose an insurmountable legal defense, that is, that Defendant is subject to the Motor Carrier Act exemption to Plaintiffs' § 207 overtime compensation claim.

Defendant next argues that Plaintiffs have pled facts "on the face of the complaint [that] clearly disclose an insurmountable legal defense to recovery" for their FLSA unpaid overtime claim. (Def.'s Br. in Supp. Mot. to Dismiss [Doc. #8], at 7.)  Defendant argues that because Plaintiffs allege that Defendant is a " 'freight shipping and trucking company, running a freight hauling business from Greensboro, North Carolina' ", that Plaintiffs have alleged clear facts that put Defendant within the Motor Carrier Act exemption.  (Id. at 8 (citing Compl. at ¶¶ 2, 13).) Indeed, "in the rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)."  Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc).  However, "[t]his principle only applies . . . if all the facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.' "  Id. (emphasis added) (quoting Richmond, Fredricksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)).

Under the FLSA, employers are required to pay their employees at a rate of "not less than one and one-half times the regular rate at which he [or she] is employed" when the employees work more than forty hours in a work week.  29 U.S.C. § 207(a).  However, this general rule is subject to an exemption; specifically, the employer is exempt from adhering to the overtime requirement for "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of  section

14

31502 of Title 49", a provision that falls under the Motor Carrier Act (MCA). Id. at § 213(b)(1). Pursuant to 49 U.S.C. § 31502, the Secretary of Transportation may determine the requirements for "(1) qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier; and (2) qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation." Id. Defendant argues that such an exemption ("MCA exemption") has been conclusively established to apply in this case, based on the allegations in Plaintiffs' Complaint and based on the contents of an Exhibit [Doc. #8-1] referenced by Defendant. As such, the Court will address this argument in turn.

First, Defendant argues that Plaintiffs have alleged facts in the Complaint to show that Defendant is subject to the MCA exemption. Specifically, Defendant argues that Plaintiffs, and members of the proposed collective action, have alleged facts that show that they performed work for the employer that "affects the safety of operation of [D]efendant's trucks in interstate commerce."[7]   (Def.'s Br. in Supp. Mot. to Dismiss [Doc. #8], at 11.)   It is true that "the 'fundamental test' for determining whether the MCA exemption applies is whether 'the employee's activities affect safety of operation' of motor vehicles and are therefore within the jurisdiction of the Secretary of Transportation." Dalton, 2010 WL 1325613, at *2 (quoting Levinson v. Spector Motor Serv., 330 U.S. 649, 671, 67 S. Ct. 931, 91 L. Ed. 1158 (1947)). Therefore, "[m]otor carrier employees whose activities affect the safety of operation of the motor carrier are covered by the Motor Carrier Act and exempt from regulation under FLSA;

_____

[7] It does not appear that the interstate commerce element is at issue based on the allegations of the Complaint and the lack of argument, by the parties, as to that element.

but those whose activities do not affect the safety of operation are not governed by the Motor Carrier Act, and not exempt from the wage and hour provisions of FLSA." Troutt v. Stavola Bros., Inc., 107 F.3d 1104, 1107 (4th Cir. 1997). The MCA exemption to the FLSA covers the work activities of truck drivers, loaders, mechanics, and helpers. Levinson, 330 U.S. at 673, 67 S. Ct. 931; Troutt, 107 F.3d at 1107. In this case, Plaintiffs' Complaint alleges that the work duties of Plaintiffs, and the members of the proposed collective action, included "loading and unloading trucks" and "traveling with the Defendant's trucks as laborers" to various locations within and outside of North Carolina. (Compl. at ¶ 19.) Thus, at first blush, it may appear that Plaintiffs are loaders or even helpers for the purposes of considering the MCA exemption. However, the Supreme Court has stated that in deciding whether an employee's activities fall within the MCA exemption, courts should not make such a determination based on the name of the employee's position or the name given to the work that he or she does. Pyramid Motor Freight Corp. v. Ispass, 330 U.S. 695, 707, 67 S. Ct. 954, 91 L. Ed. 1184 (1947). Instead, district courts should "give particular attention to whether or not the activities of the respective [employees] include[ ] that kind of 'loading' which is held by the Commission to affect safety of operation."[8] Id. at 707-08. Additionally, "the question of whether a particular employee is a

_____

[8] The Court notes that both Plaintiffs and Defendant rely on interpretations of the MCA exemption as set forth in the regulations promulgated by the Department of Labor in making their arguments. Specifically, Plaintiffs and Defendant rely on the following regulations, *inter alia*: (1) 29 C.F.R. § 782.2(a) to determine whether an employer is subject to the MCA exemption, (2) §§ 782.4(a) and 782.5(a) to define the terms "helper" and "loader", and (3) § 782.5(c) to determine whether certain exceptions apply to the MCA exemption itself. However, the Fourth Circuit, in Troutt, stated, in discussing the "unique provisions" of the exemption to the FLSA that it was " '*not* dealing with an exception to th[e] Act which is to be measured by regulations which Congress has authorized to be made by the Administrator of the Wage and Hour Division, United States Department of Labor. Instead, we are dealing with the interpretation

16

'loader' requires an individualized determination in to the actual work performed by that employee." Williams v. Md. Office Relocators, 485 F. Supp. 2d 616, 619 (D. Md. 2007) (citing Pyramid, 330 U.S. at 708, 67 S. Ct. 954 and Troutt, 107 F.3d at 1108).  However, Defendant requests that this Court determine, at the motion to dismiss stage, that because Plaintiffs allege that they, and members of the proposed collective action, "engage [ ] in loading trucks" and "ride with drivers on these trucks", (Defendant's Brief in Support of Motion to Dismiss [Doc. #8], at 13), the Court should find that Plaintiffs, by their own allegations, have conclusively shown that their work activities fall within the MCA exemption.  Although a close call, the Court finds that such a determination at this stage of the proceedings, based on the allegations in the Complaint, would be premature, in light of the standard set forth in Pyramid.  Specifically, the Court cannot conclusively find that Plaintiffs, and members of the proposed collective action, are "loaders" or "helpers" for the purpose of applying the MCA exemption based on the name of the employees position or the name given the work that they did, which is pretty much what the Complaint consists of, to the extent it discusses the work activities at issue in this case.[9]

_____

of the scope of the safety program of the Interstate Commerce Commission [(now the Secretary of Transportation]), under § 204 of the Motor Carrier Act, which in turn is to be interpreted in the light of the regulations made by the Interstate Commerce Commission pursuant to that Act.' " 107 F.3d 1104, 1107 n.1 (4th Cir. 1997) (emphasis in the original) (quoting Levinson, 330 U.S. at 676-77, 67 S. Ct. 931).  As the Court has not found any Fourth Circuit or Supreme Court authority to the contrary, the Court will not rely on the Department of Labor regulations cited by the parties in determining whether the MCA exemption applies in this case.

[9] Additionally, the Court accepts Plaintiffs' argument, at the motion to dismiss stage and without a responsive argument from Defendant, that the Complaint lacks facts to show whether Plaintiffs', and members of the proposed collective action's, activities in this case are of the character that affect the safety of operation of Defendant's vehicles.  As Plaintiffs' assert, the facts could later reveal that Plaintiffs, and members of the proposed collective action, exercised little to no discretion in conducting the loading of the vehicles in this case, which could in turn

Thus, the Court finds that the Complaint is devoid of sufficient facts that would *conclusively* establish that Defendant is subject to the MCA exemption under the FLSA.[10]

Furthermore, the Court accepts Plaintiffs' argument that Plaintiffs need not plead facts related to any affirmative defense, which includes facts specifically related to the MCA exemption. Theune v. Bank, N.A., Civ. No. MJG-13-1015, 2013 WL 5934114, at *4 (D. Md. Nov. 1, 2013) ("[A] Plaintiff is not required to plead in a complaint facts that avoid or rebut an affirmative defense."); see Goodman, 494 F.3d at 466 (acknowledging that a plaintiff would not be required "to plead affirmatively in his complaint matters that might be responsive to affirmative defenses even before the affirmative defenses are raised"); see also Buscarino v. TQ Logistics, Inc., Civ. A. 0:08-3882-JFA, 2010 WL 3211708 (D.S.C. Aug. 11, 2010) ("An exemption to the FLSA is an affirmative defense on which the defendant bears the burden of proof." (citing Clark v. J.M. Benson Co., 789 F.2d 282, 286 (4th Cir. 1986)). Additionally, the

---

be taken into consideration by the Court in determining whether such activities affect the safety of operation. Cf. Blankenship v. Thurston Motor Lines, Inc., 415 F.2d 1193, 1197 (4th Cir. 1969) ("[W]here, as here, the employee retains some appreciable discretion in conducting the loading operation in the first instance, his employer is exempt from the overtime provisions of the FLSA."); Vaughn v. Watkins Motor Lines, Inc., 291 F.3d 900, 905 (6th Cir. 2002) (applying the discretion rule applied in Blankenship and concluding that the plaintiffs exercised enough discretion in the loading operation for their activities to affect the safety of operation of the carrier). But see Blankenship, 415 F.2d at 1195 ("[W]e note that the Interstate Commerce Commission, in defining and discussing the 'loader' classification of employees, drew no distinction between various categories of employees with respect to the extent or degree of supervision, independent decision or discretion which each exercised.").

[10] However, the Court does not purport to rule out Defendant's affirmative defense argument that the MCA exemption would ultimately apply in this case. The Court has merely determined, that based on the limited allegations in the Complaint, Plaintiffs have not alleged, to Defendant's benefit, all the facts necessary to conclusively establish that the MCA exemption applies in this case.

Court notes that the burden is on the employer, in this case, Defendant, to show that it is exempt from the FLSA overtime provisions. See Arnold v. Ben Kanowsky, Inc., 361 U.S. at 392, 394 n.11, 80 S. Ct. 453 (finding that the burden of proving a FLSA exemption is on the employer and stating, "We have held that [FLSA] exemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit"); see Pugh v. Lindsay, 206 F.2d 43, 46 (4th Cir. 1953) ("Since the [FLSA] is remedial in nature, the exemptions contained therein must be strictly construed, and it is incumbent upon one asserting an exemption to bring himself clearly and unmistakably within the spirit and the letter or its terms."). As such, the Court will decline to grant Defendant's Motion to Dismiss on the basis that the Complaint pleads facts that conclusively show that Defendant is subject to the MCA exemption, as the Court finds that the facts of the Complaint do not affirmatively establish that Defendant is subject to the MCA exemption. In any event, the Court finds that Defendant has not yet met its burden of proving that the activities of Plaintiffs, and members of the proposed collective action, put such activities within the purview of the MCA exemption.

Second, Defendant argues that it is a "motor carrier"[11] and subject to jurisdiction of the Secretary of Transportation, and thus, subject to the MCA exemption, because it is registered with the Department of Transportation as a carrier. Defendant requests that the Court take judicial notice of a document ("Exhibit"), which appears to be a printout from a Department of Transportation website acknowledging that Defendant is a registered carrier with that

---

[11] Section 13102 of Title 49 defines the term "motor carrier" as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102.

Department, to support its argument that it is a motor carrier subject to the MCA exemption. (See USDOT Company Snapshot [Doc. #8-1].) Thus, Defendant requests that this Court take judicial notice of what it purports to be a public record. (Def.'s Br. in Supp. Mot. to Dismiss [Doc. #8], at 9-10 (citing to Williams v. Long, 585 F. Supp. 2d 679, 690 (D. Md. 2008) for the proposition that courts may take judicial notice of federal agency records that are self-authenticating).) Plaintiffs challenge Defendant's request for judicial notice of the Exhibit by stating that at this stage of the proceedings, the Court may only consider a document attached to the Defendant's Motion to dismiss if (1) the document is "integral to and explicitly relied on in the complaint" and (2) if the plaintiff "does not contest its authenticity." See Alexander v. City of Greensboro, 1:09-CV-934, 2011 WL 13857 (M.D.N.C. Jan. 4, 2011) (quoting Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) (alterations in the original) (quoting Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999))).

However, the rule Plaintiffs cite is a rule that discusses when the Court may consider documents attached to Defendant's Motion to Dismiss, which appears to be a separate rule from when a Court may take judicial notice of public record. See United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 136 (4th Cir. 2014) (acknowledging that the court may (1) "properly take judicial notice of matters of public records" and (2) "consider documents incorporated into the complaint by reference . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." (internal quotation marks and citations omitted)); Wittohn v. Fed. Ins. Co., 164 F. App'x 395, 397 (4th Cir. 2006) (finding that the court may take notice of public records and citing Blue Tree Hotels v. Starwood Hotels & Resorts, 369 F.3d 212, 217 (2d Cir. 2004)); Reed v. Md. Dep't of Human

Res., No. ELH-12-0472, 2013 WL 489985, at *4-5 (D. Md. Feb. 7, 2013) (finding that the court may consider the EEOC charge attached to the defendants' motion to dismiss because (1) the plaintiff relied on the charge in his complaint and (2) the EEOC charge was subject to judicial notice because it was a public record); cf. Gasner v. Dinwiddie, 162 F.R.D. 280, 282 (E.D. Va. 1995) (allowing the district court to take judicial notice of public records even when the documents were not referenced in the plaintiffs' complaint, nor were they integral to plaintiffs' complaint, however finding that the document was pertinent to the plaintiffs' claims).

Although both parties make meritorious arguments of whether the Exhibit provided by Defendant is subject to judicial notice by this Court, the Court need not resolve the issue of whether it can take judicial notice of such a document at this stage of litigation. This is because the Court finds that, even if it considered the Exhibit as a public record and took judicial notice of the Exhibit, such a document does not conclusively establish that Defendant is a "motor carrier" subject to the MCA exemption.[12] Specifically, the Court has determined that the Complaint does not conclusively establish that Plaintiffs have alleged facts showing that Plaintiffs performed work for Defendant that affects the safety of operation, and thus that

---

[12] Defendant relies on Vidinliev v. Carey Int'l, Inc., 581 F. Supp. 2d 1282, 1285 (N.D. Ga. 2008) for the proposition that evidence that a carrier has a permit or license issued by the Department of Transportation is sufficient to show that the carrier is a motor carrier whin the jurisdiction of the Secretary of Transportation. (Def.'s Br. in Supp. Mot. to Dismiss [Doc. #8], at 9.) Even considering Vidinliev, although Defendant's Exhibit may show that Defendant is subject to the jurisdiction of the Department of Transportation, the Court notes that such a determination would not be dispositive on the issue of whether Defendant is subject to the MCA exemption, given that Defendant must be able to demonstrate by Plaintiffs' Complaint that Plaintiffs, and members of the proposed class, performed work that affects the safety of operation so as to exempt Defendant from FLSA overtime violation suits at this stage of litigation.

Defendant is subject to the MCA exemption. Thus, the Court need not determine, at the motion to dismiss stage, whether (1) the Court can take judicial notice of Defendant's Exhibit or (2) Defendant's Exhibit is sufficient to show that Defendant is subject to the jurisdiction of the Secretary of Transportation, as such a determination would not have a dispositive effect on the resolution of the Motion to Dismiss currently before the Court. For these reasons, the Court finds that Defendant's request that the Court take judicial notice of its Exhibit, at least at this stage of litigation, is denied. Cf. In re Groff, No. 1100329-8-RDD, 2011 WL 6140744, at *2 (Bankr. E.D.N.C. Dec. 9, 2011) ("However, it is not mandatory that the court consider public records in deciding a motion to dismiss and the court may use its discretion in taking judicial notice of public records" citing Dippin' Dots, Inc. v. Frosty Bites Distribution, Inc., 369 F.3d 1197, 1204-05 (11th Cir. 2004)). However, Defendant's request for judicial notice is denied without prejudice to Defendant raising such a request at a later stage in this litigation.

Therefore, for the reasons stated herein, the Court will deny Defendant's Motion to Dismiss [Doc. #7] and will deny without prejudice Defendant's Request for Judicial Notice of Facts [Doc. #7].

IV.    CONCLUSION

For the reasons stated above, it is hereby ordered that Defendant's Motion to Dismiss [Doc. #7] is DENIED. Furthermore, Defendant's Request for Judicial Notice of Facts [Doc. #7] is DENIED WITHOUT PREJUDICE to Defendant raising such a request at a later stage in this litigation.

This the 31st day of July, 2014.

United States District Judge